```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| ANDREI GOUMILEVSKI | : |
|  | : |
| v. | :  Civil Action No. DKC 2006-3247 |
|  | : |
| MICHAEL CHERTOFF, et al. | : |
|  | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this mandamus action is a motion by Defendants Michael Chertoff, Secretary of the United States Department of Homeland Security; Emilio Gonzales, Director of the United States Citizenship and Immigration Services; and Robert S. Mueller, Director of the Federal Bureau of Investigation, to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Paper 9). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted.

**I. Background**

Plaintiff Andrei Goumilevski is currently a non-permanent resident of the United States residing in North Potomac, Maryland. Plaintiff seeks to become a legal permanent resident. He filed the appropriate I-485 application for adjustment of status with the United States Citizenship and Immigration Services (USCIS) pursuant

to Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255(a).  The following facts are uncontested.

Plaintiff filed with the Vermont Service Center an I-485 Application to Register Permanent Resident or Adjust Status on October 12, 2004.  (Paper 1).  The case was later transferred to the USCIS Baltimore District Office.  "When a lawful permanent resident alien applies for adjustment of status USCIS conducts several forms of security and background checks to ensure that the alien is eligible for the benefit and that he or she is not a risk to national security or public safety."[1]  (Paper 9, Exhibit 1).  On May 25, 2005, Plaintiff had an interview regarding his application with an immigration officer at the Baltimore District Office. (Paper 1).  On October 21, 2004, the FBI initiated a name check on Plaintiff.  (Paper 9, at 2).  Interagency Border Inspection System (IBIS) checks were initiated on May 20, 2005.  (Paper 9, at 2). FBI fingerprint checks of Plaintiff were initiated on June 25, 2005.  (Paper 11, at 8).  USCIS is continuing to review and investigate the information and evaluate the eligibility of Plaintiff for lawful permanent resident status and the results of the FBI name check are pending.  (Paper 9, at 2).

---

[1] "Background checks currently include (a) a Federal Bureau of Investigation (FBI) fingerprint check . . . ; (b) a check against the DHS-managed Interagency Border Inspection System (IBIS) that contains records and 'watch list' information . . . ; and (c) an FBI name check, which is run against FBI investigative databases containing information that is not necessarily revealed by the FBI's fingerprint check, or IBIS."  (Paper 9, Exhibit 1).

Concerned about the long delay of the processing of his application, Plaintiff has inquired about his case three times through appointments with an immigration officer at the Baltimore District Office, sent three letters to Maryland Senator Barbara Mikulski, sent one letter to Maryland Senator Paul Sarbanes, and asked the FBI to release information under the Freedom of Information and Privacy Act. He was told by all parties that his security checks are still pending. (Paper 1).

With no other administrative remedy available, on December 4, 2006, Plaintiff filed a complaint seeking to compel Defendants to process his I-485 application. (Paper 1). Plaintiff claims that Defendants have unreasonably delayed the adjudication of his I-485 Application to Register Permanent Resident or Adjust Status. (Paper 1 at 5). On February 13, 2007, Defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction or in the alternative Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

**II. Standard of Review**

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to

help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647.  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Richmond*, 945 F.2d at 768.

**III. Subject Matter Jurisdiction**

Plaintiff brings his mandamus action pursuant to federal question jurisdiction, 28 U.S.C. § 1331; the Mandamus Act, 28 U.S.C. § 1361; and the Administrative Procedures Act (APA), 5 U.S.C. § 551 *et. seq.*  Defendants argue that this court lacks subject matter jurisdiction to grant mandamus because 8 U.S.C. § 1252(a)(2)(B)(ii), divests courts of jurisdiction to review discretionary action of USCIS.  Defendants further argue that the court lacks jurisdiction to grant Plaintiff's request for mandamus pursuant to 28 U.S.C. § 1361, because Plaintiff has no clear right to immediate adjudication and Defendants have no clear duty to provide immediate adjudication.  Finally, Defendants argue that pursuant to 5 U.S.C. § 701(a)(2), the APA precludes the court from reviewing Plaintiff's claim.

Plaintiff filed an I-485 application to obtain status as a permanent resident pursuant to Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255(a).  The statute authorizes the

4

Attorney General to adjust to permanent residence status certain aliens who have been admitted into the United States at his discretion and under regulations as he may prescribe, if:

> 1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

Defendants assert that Plaintiff's claim should be dismissed because a provision of the Immigration and Nationality Act, as amended in 2005, 8 U.S.C. § 1252(a)(2)(B)(ii), divests this court of jurisdiction where decisions or actions of the Attorney General or Secretary of Homeland Security are discretionary.  8 U.S.C. § 1252(a)(2)(B)(ii), states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including . . . sections 1361 [of title 28] . . . and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter [§§ 1151-1378] to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ."

Courts have consistently held that the meaning of this statute is unambiguous.  "As courts have recognized, this statute's meaning is refreshingly free from ambiguity and its terms are pellucidly clear: It means that courts are precluded from reviewing *any*

5

discretionary decision or action of USCIS [that fall under sections 1151-1378, including section 1255(a) at issue here]." *Safadi v. Howard*, 466 F.Supp.2d. 696, 698 (E.D.Va. 2006).

Courts are split however, with respect to whether the pace at which USCIS adjudicates claims is considered to be part of the discretionary authority granted to the Attorney General in 8 U.S.C. § 1255(a) or if the discretionary authority extends only to the decision to grant or deny an application. If the pace at which an application is processed is considered to be a discretionary "action", then this case clearly falls under 8 U.S.C. § 1252(a)(2)(B)(ii), and this court lacks subject matter jurisdiction.

The United States District Court for the Eastern District of Virginia held under similar facts that, "it is clear that 'action' in 1252(a)(2)(B)(ii) encompasses the *entire* process of reviewing an adjustment application, including the completion of background and security checks and the pace at which the process proceeds." *Safadi,* 466 F.Supp.2d at 699.

The court in *Safadi* reached this conclusion by interpreting the word "action" in its plain meaning as defined by Black's Law Dictionary. The plain meaning of "action" means "an act or series of acts". *Safadi*, 466 F.Supp.2d at 699. Thus, as the court in *Safadi* concluded, the term "action" in 8 U.S.C. § 1252(a)(2)(B)(ii), must encompass an "act or series of acts" that

is discretionary within the adjustment of status process.  Because 8 U.S.C. § 1255(a) does not impose any limits but simply states that the Attorney General has discretion over the adjustment of status process, the court in *Safadi* was able to conclude that "action" must include the entire process of reviewing applications, including the pace of the process.  *See Safadi*, 466 F.Supp.2d at 699.

Additionally, in reaching its conclusion that the pace of adjudicating applications is discretionary, the court in *Safadi* looked to congressional intent.  The court determined that if Congress had intended to preclude from judicial review all discretionary actions except the pace of processing, it would have included statutory time limits within 8 U.S.C. § 1255(a).  *See Safadi*, 466 F.Supp.2d at 699.  The absence of any statutory time limits for processing adjustment of status applications is an indication that Congress intended the pace to be left up to the discretion of the Attorney General.  This is further evidenced by the fact that Congress has imposed statutory time limitations in other sections of the United States Code, which empower the Attorney General or the Secretary of Homeland Security to adjudicate an application.  One example is the adjudication of applications for naturalization.  Pursuant to 8 U.S.C. § 1447(b), claims must be adjudicated within 120 days, after which applicants may bring their claims to the appropriate United States district

7

court.  *See Li v. Gonzalez,* No. 06-5911 (SRC), 2007 WL 1303000, at *4 (D.N.J. May 3, 2007).

Plaintiff claims that the holding in *Safadi* should not be followed because the circumstances of his pending application are different than the pending application in *Safadi*.  Plaintiff is waiting on the completion of FBI name checks, while the plaintiff in *Safadi* was not waiting on any security checks. (Paper 11 at 8). However, both cases present the same legal issue: whether the pace at which USCIS adjudicates claims is a discretionary action subject to the Immigration and Nationality Act provision, 8 U.S.C. § 1252(a)(2)(B)(ii), divesting this court of jurisdiction. Therefore, the holding in *Safadi* is relevant here.

The United States Court of Appeals for the Fourth Circuit has not yet addressed the issue presented here.  A growing number of trial courts have dismissed similar actions for lack of subject mater jurisdiction, under the rationale that 8 U.S.C. §§ 1255(a) and 1252(a)(2)(B)(ii), of the Immigration and Nationality Act, preclude judicial review of any discretionary "decision or action" of the Attorney General in immigration matters, including the pace of review of an I-485 application.[2] As persuasively expressed by

---

[2] *See Grinberg v. Swacina*, 478 F.Supp.2d 1350 (S.D.Fla. 2007); *Patil v. Mueller*, No. Q:07cv71 (JCC), 2007 WL 1302752, (E.D.Va. Apr. 30, 2007); *Serrano v. Quarantillo*, No. CIV. 06-05221-DRD, 2007 WL 1101434, (D.N.J. Apr. 9, 2007); *Hu v. Chertoff*, No. CIV.S-06-2805 WBS EFB, 2007 WL 1515067, (E.D.Cal. May 22, 2007); *Dmitrenko v. Chertoff*, No. 1:07cv82 (JCC), 2007 WL 1303009, (E.D.Va. Apr. 30,
(continued...)

the court in *Safadi,* discretionary "actions" include the entire process of viewing an adjustment application, including the pace at which the process proceeds.  *Safadi,* 466 F.Supp.2d at 699. Accordingly, 8 U.S.C. § 1252(a)(2)(B)(ii) effectively divests this court of jurisdiction.  In addition, 28 U.S.C. §§ 1361, 1331, and the APA, which Plaintiff contends confer subject matter jurisdiction, do not restore subject matter jurisdiction because 8 U.S.C. § 1252(a)(2)(B)(ii) "specifically precludes judicial review notwithstanding § 1361 or any other provision of law." *Safadi*, 466 F.Supp.2d at 700.

Plaintiff alternatively claims that this court has jurisdiction pursuant to 28 U.S.C. § 1361, the Mandamus Act.  The statute provides that, "[t]he district courts shall have original jurisdiction in any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988).  There are three requirements for obtaining mandamus of a clear nondiscretionary duty:

---

[2](...continued)
2007); *Li v. Gonzalez,* No. 06-5911 (SRC), 2007 WL 1303000, (D.N.J. May 3, 2007).

>In order to meet the requirements for mandamus relief, the petitioner must show that he has the clear legal right to the relief sought; that the respondent has a clear legal duty to do the particular act requested; and that no other adequate remedy is available. The failure to show *any* of these prerequisites defeats a district court's jurisdiction under § 1361.

*Asare v. Ferro*, 999 F.Supp. 657, 659 (D.Md. 1998).

Plaintiff's claim must fail because Defendant does not owe a clear "nondiscretionary" legal duty to process his adjustment of status application at any particular pace or speed.  As discussed above, the pace at which an application is processed is subject to the Attorney General's discretion.  In addition, Plaintiff has no clear legal right to immediate adjudication of his application. *See Patil v. Mueller,* No: 1:07cv71 (JCC), 2007 WL 1302752, at *2 (E.D.Va.).

Plaintiff finally alleges that the court has jurisdiction under the APA.  However, the APA itself precludes judicial review under certain circumstances such as the adjustment of status process at issue here.  5 U.S.C. § 701(a) states, "This chapter applies, according to the provisions thereof, except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."  A statute, 8 U.S.C. § 1252(a)(2)(B)(ii), specifically precludes judicial review in this case, "[n]otwithstanding *any* other provision of law . . . ."  In

10

addition, 8 U.S.C. § 1255(a) commits agency action to the discretion of the Attorney General.

## IV. Conclusion

Title 8 U.S.C. § 1252(a)(2)(B)(ii) divests this court of jurisdiction and the case will be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).  A separate Order will follow.

<pre>                                    /s/
                          DEBORAH K. CHASANOW
                          United States District Judge</pre>